Jasen, J.
(dissenting). Upon the conceded facts and circumstances present in this case, I would not hold, as the majority does, that it was improper for the Sullivan County District Attorney’s office to prosecute defendant Shinkle merely because a member of its staff had at one time acted as defendant’s cocounsel while a member of the Sullivan County Legal Aid staff.
To adopt, as the majority has, a per se disqualification rule effecting the entire staff of the office of the District Attorney, without a showing of prejudice or without re *422 quiring that even a question as to the integrity of the office of the District Attorney be raised, is both unnecessary and undesirable as a matter of policy. Mere speculation and innuendo should not be the basis for establishing a per se rule of automatic disqualification. Instead, in each case where a claim of conflict is alleged, the court should consider all the facts and circumstances present and determine, as a question of fact, whether a conflict of interest exists and whether the integrity of the prosecutor’s office has been compromised either in appearance or in actuality.
This is precisely what County Court and the Appellate Division did in this case. After considering all the facts and circumstances, both courts found that the former Legal Aid attorney, Edward Leopold, upon his appointment as Chief Assistant District Attorney, was deliberately isolated from the rest of the District Attorney’s office in all pending cases in which the defendants were represented by Legal Aid. “[0]nce Leopold assumed his position in the prosecutor’s office,” the Appellate Division found, “he took immediate affirmative steps to avoid any prejudice to defendant and any appearance of impropriety which might have resulted from his becoming Chief Assistant District Attorney. Not only did he have ‘conflict’ stickers placed on all cases involving the Legal Aid Society which were pending in the District Attorney’s office, but the staff of the office was ordered to refrain from discussing these cases with him and to deny him access to the files of such cases.” (73 AD2d, p 765.) This court is bound by such affirmed findings of fact unless there is no support in the record for such findings. (NY Const, art VI, § 3.) Yet, notwithstanding these affirmed findings of fact, the majority holds that defendant’s convictions for aggravated rape and other crimes should be reversed because, as a matter of law, there is present in this case an “appearance of impropriety and the risk of prejudice [to the defendant] attendant on abuse of confidence.”
What abuse of confidence and what appearance of impropriety has been shown? As I stated before, the record clearly demonstrates that Leopold, upon joining the office of the District Attorney, took affirmative steps to isolate *423 himself, and the office of the District Attorney did in fact isolate him, from not only the defendant’s case, but all pending cases in which the defendants were represented by Legal Aid, thereby effectively avoiding any appearance of impropriety. Are we to imply that a reasonable person would believe that, accepting such undisputed facts, there is nevertheless an “appearance of impropriety” solely because Leopold had represented the defendant at an earlier date? I think not, for to do so, a reasonable person would be required to conclude that lawyers, under any and all circumstances, cannot be trusted to maintain the confidences and secrets of their clients, even where, as here, they attest under oath to no breach of ethics. Implicit also in such reasoning is that most, if not all, government lawyers cannot be trusted to discharge their public responsibilities faithfully. Implications such as these, in my view, are repugnant to the entire concept of the Code of Professional Responsibility adhered to by lawyers and should not be adopted by our court as the basis upon which a new per se rule of disqualification is announced.
I believe the better rule would be that unless there is some evidence presented to indicate actual prejudice to the defendant or there is some support in the record to question the integrity of the office of the District Attorney, no per se disqualification should be invoked. Where, as here, there is abolutely no evidence offered to indicate prejudice to the defendant or to raise even a question as to the integrity of the office of the District Attorney, it simply cannot be said that there is an “appearance of impropriety”.
According to the majority, “[i]t is no answer that defendant offers no evidentiary proof of actual prejudice [or abuse of confidences]” as “[i]n the circumstances such proof would most likely be out of defendant’s reach.” I cannot agree. For example, in this case, where defendant took the stand in his own defense, confidences disclosed by the defendant to Leopold, if any, could be detected during the cross-examination of the defendant. None are alleged or even suggested. Similarly, the disclosure of unfavorable witnesses and other harmful facts, if any, confidentially divulged to Leopold by the defendant could also be ascer *424 tained from the proof offered by the prosecution either in its case-in-chief or in rebuttal. Again, none are alleged or even suggested.
As a result of this court’s holding, a special prosecutor must now be appointed in every instance in which a defendant has been previously represented by counsel who is in the employ of the local District Attorney’s office when that defendant’s case comes to trial. Not only do I have grave misgivings as to the severe impact on the administration of justice which will be occasioned by this per se rule of disqualification, but the majority’s view that a special prosecutor will somehow eliminate the “appearance of impropriety” and the “risk of prejudice” which they attribute to defense counsel’s change of employment ignores the reality of the situation. For instance, in the case at bar, the special prosecutor that will be assigned to defendant’s case will have access to the same files prepared by the Sullivan County District Attorney’s office and no doubt will have contact with the attorneys of that office who were involved in the initial stages of defendant’s prosecution. Under these circumstances, it is somewhat anomalous that the majority finds solace in holding that the appointment of a special prosecutor will somehow expel the “appearance of impropriety” which they have found to so pervade the defendant’s case as to require reversal of his convictions merely because of Leopold’s presence in the office of the Sullivan County District Attorney at the time of the prosecution of the defendant.
Inasmuch as there are affirmed findings of fact that Leopold and the office of the District Attorney of Sullivan County took immediate affirmative steps to avoid any prejudice to defendant and to prevent even the appearance of impropriety, and where there was no evidence that the former Legal Aid attorney ever disclosed to the prosecution any information gained as a result of his prior representation of defendant or that the precautionary measures taken in isolating Leopold from the defendant’s case were ineffective, I would hold that it was not error for the office of the District Attorney of Sullivan County to prosecute the defendant and that the appointment of a special prose *425 cutor was not required to preserve the integrity of the prosecution.
Accordingly, I would affirm the order of the Appellate Division.
Judges Gabrielli, Wachtler, Fuchsberg and Meyer concur with Judge Jones; Judge Jasen dissents and votes to affirm in a separate opinion in which Chief Judge Cooke concurs.
Order reversed, etc.